UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                          Case Number: 3:19-CR-63-J-39MCR

MICHAEL GLENN CHOPE

_____

SENTENCING MEMORANDUM

The Defendant, **MICHAEL GLENN CHOPE**, files this memorandum to support his request that the Court impose the statutorily required minimum mandatory sentence in this case.

### INTRODUCTION

After the sentencing hearing, the Bureau of Prisons will add Mr. Chope to the "Find an Inmate" section of the website and it will likely read Michael Glenn Chope, Reg # 58701-177, age 56, release date October 3, 2031.

Mr. Chope was arrested on April 3rd of last year meaning that a 15-year sentence would cause his incarceration until the spring of 2034. Even if you assume that he will qualify for programming in the Bureau of Prisons and receives 15% for gain time, his release date would be 2031.

In this case, the minimum mandatory sentence is 180 months of incarceration in the Bureau of Prisons. Mr. Chope asserts that such a sentence is sufficient but not greater than necessary to achieve the purposes of sentencing.

1

## MR. CHOPE'S BACKGROUND

For nearly twenty years, Michael Chope served his country honorably and with distinction in the United States Army, including shorter stints in the National Guard.  He worked steadily before and after his military career.

Now he comes before this Court preparing to face what could very likely be the rest of his life in prison.  At 56 years old, even if he got only the mandatory minimum, he would be close to 70 upon release.  A guideline sentence and he would be well over 100.  Yet despite no prior criminal record, Mr. Chope is ready to accept the Court's sentence without complaint.

*Childhood abuse and divorce*

Mr. Chope was born and raised on Beale Air Force Base in California, where he was born.  His father George was in the United States Air Force and a veteran of Korea and Vietnam.  His son emulated him.  Military records reflect that George Chope even took his son with him on an Air Force mission to Puerto Rico for six months in 1969 when Michael Chope was five years old.

The Chopes separated about a year after that trip and eventually divorced.  Unfortunately, for Michael, he remained with his mother, the abuser in the family.  Mr. Chope does not talk much about her abuse, only that it was physical and verbal and that it was "bad."  When he was eleven, he went to live with his father.  He has not spoken with his mother, now 84 and living in California, in 15 to 20 years.  George Chope Sr. died in 2007 in Orange Park.

Michael Chope displayed his love of and commitment to the military while he was still in school. He was a cadet and eventually squadron leader of the Air Force ROTC at his high school and received glowing remarks from his instructor. At seventeen, Mr. Chope signed up for the Navy's delayed entry program but later changed to the Army.

Mr. Chope enlisted in the United States Army in January 1984 and graduated from the Marysville [California] Adult Education Program the following June.

*Military Life*

Mr. Chope had a long and successful Army career, and he flourished there. He was an infantryman and served two tours in Germany and another in Kuwait just after Operation Desert Storm. He twice was awarded the Army Commendation Medal for exceptionally meritorious service, leadership ability, technical skill and dedication. Other honors included four good conduct medals, three Army achievement medals and the national defense service medal.

Mr. Chope's first stint in the Army was from 1984 to 1988. He received an honorable discharge to the California Army National Guard, where he remained until redeploying in the Army in 1991. His second stint lasted until 2001. He was honorably discharged with the rank of sergeant. He then returned to National Guard duty. He ended his military career with the Massachusetts Army National Guard in 2003 and moved to Jacksonville.

While he was in the Army, Mr. Chope's younger brother, John, died from asthma at the age of 25.

Mr. Chope has always worked from the time he was sixteen years old. At the time of his arrest in 2019, he had been working for Amazon's fulfillment center for two years. Before that, he worked for Lowe's in Orange Park for about ten years.

### PURPOSES OF SENTENCING

### 1. *Punishment, Seriousness of the Offense, Promoting Respect for the Law*

Fifteen years is a long time in custody. Every day in custody, Mr. Chope is under the control of the guards and other authorities at the Bureau of Prisons. He will be told what to wear, where to sleep, when to sleep, when to eat, what to eat, and what type of work to do. If he is given an institution work assignment, like food service, groundskeeper, or laundry, he will earn $.12 to $.40 per hour. He will be given some access to phone and email contact with the outside world but all such contact will be monitored. He will have no space that is totally his own.

In April 2004, 15 years before Mr. Chope's arrest, the world was a very different place. George H. Bush was President and Dennis Hastert was Speaker of the House. The Lord of the Rings: Return of the King won the Oscar for Best Picture. The Apple Iphone did not even exist since it was released in 2007, when it cost $600 to purchase.

It is difficult to image the changes that will occur in the next 15 years. Mr. Chope will miss them all, instead being confined in the Bureau of Prisons.

### 2. *Deterrence & Protecting the Public*

The federal prosecution of Mr. Chope sends a message to him and to the community at large about the seriousness of child pornography charges. The combination of the incarceration sentence and supervised release will mean that Mr. Chope is under the court's control for at least the next 20 years.

Mr. Chope argues that incarceration is not the only way to protect the public. In *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008), the appellate court noted that protection of the public could still be served by a downward variance. The court opted to pursue the goals of protecting the public and deterring future criminal conduct through extensive counseling and treatment and an extensive period of supervised release, which itself contains substantial limitations on an individual's freedom. *Id.* at 597.

Because Mr. Chope has never served prison time before his instant incarceration, a sentence far below the bottom of the guideline range would deter future misconduct and recidivism as required by §§ 3553(a)(2)(B) and (2)(C).

A sentence of fifteen years for a first offender is a substantial sentence. Fifteen years is not a slap on the wrist: it is 180 months or 780 weeks or 5475 days. Anyone who thinks that such a lengthy term of incarceration is an insignificant punishment has not visited a federal prison lately. Even under

the most humane and enlightened conditions (which are imperiled once fellow inmates learn about why a downloader is serving time), five years is a significant loss of liberty. See *United States v. Grober*, 595 F.Supp2d 382 (D.N.J. 2008); *United States v. Baker,* 445 F.3d 987 (7th Cir. 2006) (affirming a below guideline sentence of 78 months when the guidelines called for 108 months imprisonment in distributing child pornography case, noting that "significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned."); *United States v. Mishoe*, 241 F.3d 214 (2d Cir. 2001) (A[I]f a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect."); *United States v. Qualls*, 373 F. Supp.2d 873 (E. D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration. . . .").

A sentence here will also require that Mr. Chope comply with all of the terms of supervised release. The term of supervised release is at least five more years.

Besides the on-going court review of supervised release, Mr. Chope will be subject to civil reporting requirements. Mr. Chope will have to report to the

local authorities periodically and update his address. The state authorities maintain a public, searchable database with the offender's name, address, and photograph, and the database provides general information about the person's conviction. Failure to update such information as required as a separate criminal offense, which can subject a person to additional criminal charges for a failure to register appropriately.

It is also important to note that B.C. is almost 10 years old right now. If the Court imposes the minimum mandatory sentence, she will be well into her 20's and in control of her own decisions before Mr. Chope is released. The state court has already, without objection by Mr. Chope, terminated his parental rights.

### 3. *Correctional Treatment and Rehabilitation*

It is generally not appropriate for the Court to impose or lengthen a term of incarceration in order to provide rehabilitation or treatment. See 18 U.S.C. §3582, 28 U.S.C. §994(k), and *Tapia v. United States*, 131 S.Ct. 2382 (2011). And although the Court can make recommendations to the BOP regarding placement or programming, only the BOP makes the final determinations for where Mr. Chope will be placed or what programming to offer.

Mr. Chope would ask the court to recommend to the BOP placement in a program specializing in the treatment of sex offenders. According to the BOP website, there are nine facilities which provide sex offender treatment

programs out of approximately 150 total incarceration facilities operated by the Bureau. (https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp, last accessed Augus 26, 2020).



These facilities, apart from FCI Marianna, are generally farther away from the Middle District of Florida. Mr. Chope would ask the Court to include in the Judgment a statement recommending placement at such a facility (one providing sex offender treatment) and that if the BOP's decision is to place Mr. Chope close to Jacksonville or in treatment, that the focus be on the treatment.

Mr. Chope is currently what would be described as an elderly inmate at the BOP since it defines aging inmates as anyone over the age of 50. In May 2015, the Office of Inspector General, Federal Department of Justice, produced a report entitled "The Impact of an Aging Inmate Population on the Federal

Bureau of Prisons." The report defined 'aging' inmates as those who are older than 50 years. The OIG Report concluded that:

a. Aging inmates are more costly to incarcerate, primarily due to their medical needs. Mr. Chope has physical health problems, most recently from the motorcycle accident last year.

b. BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population and provide limited training for this purpose. Aging inmates often require assistance with activities of daily living, such as dressing and moving around within the institution. However, institution staff is not responsible for ensuring inmates can accomplish these activities. At many institutions, healthy inmates work as companions to aging inmates; but training and oversight of these inmate companions vary among institutions.

c. The physical infrastructure of BOP institutions cannot adequately house aging inmates. Aging inmates often require lower bunks or handicapped-accessible cells, but overcrowding throughout the BOP system limits these types of living spaces.

d. The BOP does not provide programming opportunities specifically addressing the needs of aging inmates. BOP programs, which often focus on education and job skills, do not address the needs of aging inmates, many of whom have already obtained an education or do not plan to seek further employment after release.

9

e. Aging inmates commit less misconduct while incarcerated and have a lower rate of re-arrest once released. Aging inmates, comprising 19 percent of the BOP's inmate population in FY 2013, represented 10 percent of all the inmate misconduct incidents in that year. Mr. Chope received no disciplinary reports or write-ups while in custody. He completed 35 hours of educational courses during his time in the BOP. PSR, ¶56. During his first BOP incarceration, he receive 107 hours of educational programming. PSR, ¶47.

f. Aging inmates could be viable candidates for early release, resulting in significant cost savings; but BOP policy strictly limits those who can be considered and, as a result, few have been released.

Finally, since Mr. Chope faces a lengthy term which will put into retirement age when he's released, there is little educational or vocational training which will assist him in his return to society.

### 4.  *Restitution*

It is not clear whether there will be a restitution requirement in this case. The government is going to ask to bifurcate the hearing on the financial issues.

### GUIDELINES, POLICY STATEMENTS AND KINDS OF SENTENCES AVAILABLE

There is a minimum mandatory sentence involved so Mr. Chope is aware that he faces a very significant term of incarceration. In spite of the fact that he is facing such a sentence, he has been willing to resolve the case by a guilty

plea very early since very early in the case.[1]  He should receive credit for his decision to enter a plea without requiring any litigation or trial in this case. Mr. Chope's decision saved the victim or her family any possibility of having to testify and gave an early resolution to the case.

    WHEREFORE, Mr. Chope is asking the Court, not for mercy or forgiveness, but for imposing the sentence at the minimum mandatory.

    Dated: August 26, 2020.

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

s/ Lisa Call
_____
Lisa Call,
Assistant Federal Defender
Florida Bar No. 0896144
200 West Forsyth Street, Suite 1240
Jacksonville, FL 32202
Telephone: (904) 232-3039
Facsimile: (904) 232-1937
Lisa_Call@fd.org

---

[1] The early delays in the case were caused by the state's outstanding warrants and Mr. Chope's desire to understand how this case's resolution might impact the state court resolution.  Ultimately, Mr. Chope pled guilty here, even knowing that the state court charge remained outstanding.  This uncertainty remains even through today since the state warrants remain outstanding.

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic filing through the United States District Court to Ashley Washington, US Attorney's Office, 300 North Hogan Street, 7th Floor, Jacksonville, FL 32202 on August 26, 2020.

                                            s/ Lisa Call
                                            _____

                                            Lisa Call
                                            Assistant Federal Defender